Robert Hamilton, OSB # 012730
Assistant Federal Public Defender
Email: robert_hamilton@fd.org
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204
Tel: (503) 326-2123

Attorney for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:26-mj-00100-1 |
| Plaintiff, | |
| v. | RESPONSE TO GOVERNMENT'S MOTION TO REVOKE RELEASE ORDER |
| PABLO VILLASENOR-OCHOA, | |
| Defendant. | |

Defendant Pablo Villasenor-Ochoa, through his attorney, Robert Hamilton, submits this Response to the Government's motion to revoke the release order issued by the Magistrate Judge in this matter. For the reasons below, this Court should affirm the pending release order, which was supported by the pretrial officer.

## I.    BACKGROUND

Mr. Villasenor-Ochoa is 38 years old. As confirmed by Pretrial's investigation, he has no criminal history. He has been in the Tillamook, Oregon, area for approximately 13 years. During that time, he has worked at three different dairy farms. Before that he lived and worked in California for nearly 10 years. He and his wife have been together for 16 years. They have three children together, ages 15, 10, and 4. The children live with them at the proposed release address.

Page 1    RESPONSE TO GOVERNMENT'S MOTION TO REVOKE RELEASE ORDER

While the future of their marriage remains uncertain, they are both attending counseling and learning to co-parent.

On December 21, 2025, Tillamook County Sheriff Office (TCSO) received a report that Villasenor-Ochoa had loaded a firearm in front of his wife and made a threat to kill her and himself if they could not be together. ECF 1-1, ¶ 5 (Complaint Affidavit). Two days later, on December 23, a deputy spoke to Villasenor-Ochoa on the phone and Villasenor-Ochoa allegedly admitted to making an "error" when he took out the firearm and said something to the above effect. *Id*. There are no allegations he pointed the firearm. The TCSO later located Mr. Villasenor's truck at his workplace and spotted a bag with a firearm. *Id*., ¶ 6. Mr. Villasenor was arrested without incident and consented to a search of the truck where the TCSO retrieved the firearm. Officers found a small user quantity of methamphetamine on defendant's person. *Id*.

On December 24, 2025, Mr. Villasenor-Ochoa was charged in Oregon state court with menacing, a misdemeanor. *State of Oregon v. Villasenor Ochoa*, case no. 25CR71300. He was released that same day, with a "no contact" order among other conditions. On January 2, 2026, his wife moved the court to remove the no contact. On January 26, 2026, the state court held a hearing, at which Mr. Villasenor-Ochoa and his wife appeared, and the court agreed to lift the no contact order. Subsequently, Mr. Villasenor-Ochoa appeared at his arraignment and case management hearing on March 30, 2026. At that time, the state issued an Amended Information which added felony charges of unlawful use of a weapon and identity theft. The state court set the case over to May 4 for the state to go to grand jury on the felonies. On May 4, Mr. Villasenor-Ochoa was unable to appear because he was in federal custody. At that time, no indictment had been obtained.[1] The

---

[1] The identity theft count is for two identifications alleged to be false, a social security card and a resident card. The cards were in Mr. Villasenor-Ochoa's name and appear to have been for the purpose of getting work. Identity theft has an element an "intent to deceive or cheat." O.R.S. § 165.800. The unlawful use of a weapon charge has an element requiring "attempt to use" or "possession with attempt to use" the firearm. O.R.S. § 166.220(1)(a). The disconnect between the facts and these two unindicted felony charges may explain the lack of a grand jury indictment.

Page 2    RESPONSE TO GOVERNMENT'S MOTION TO REVOKE RELEASE ORDER

state court did not issue a warrant because of his history of appearing at scheduled hearings and because the parties suspected Mr. Villasenor had been picked up by federal authorities, which he had. There have been no motions to revoke his release in the state case.

On April 20, 2026, four months after the original incident, the government sought and obtained a criminal complaint in this matter alleging one count of alien in possession of a firearm in violation of 18 U.S.C. § 922(g)(5). ECF 1. Mr. Villasenor-Ochoa was arrested on the federal complaint on May 1 and made his first appearance in federal court on May 4. A review of detention hearing was held on May 11. As part of Pretrial's investigation, the defendant's wife confirmed she and Mr. Villasenor-Ochoa were attending counseling sessions and were co-parenting their kids who lived primarily at the proposed release address, which is the same address Mr. Villasenor-Ochoa was approved to live at in his state case. The two have alternating work schedules and she reports that with sobriety and counseling, Mr. Villasenor-Ochoa has been much improved. She supports his release.

The Pretrial officer recommended release on conditions. The Magistrate Judge considered the facts and the release factors and determined there were conditions of release which would reasonably assure Mr. Villasenor-Ochoa's appearance and the safety of the community. Mr. Villasenor-Ochoa urges this Court to affirm the existing release order.

## II.    STANDARD OF REVIEW

This Court has de novo review of the existing release decision.

## III.    LAW

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). This presumption of

release is encapsulated in the Bail Reform Act in multiple ways. The statute mandates that a court "shall order" pretrial release, § 3142(b), except in certain narrow circumstances. The statute imposes a gatekeeping function at the initial appearance and authorizes a detention hearing only for certain cases. 18 U.S.C. § 3142(f). Then, for cases where a detention hearing is authorized, "[t]he Act mandates the release of a person pending trial unless the court 'finds no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any person and the community.'" *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008), quoting 18 U.S.C. §3142(e). Under this statutory scheme, "it is only a 'limited group of offenders' who should be detained pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1983), as reprinted in 1984 U.S.C.C.A.N. 3182, 3189). The court considers the four factors in 18 U.S.C. § 3142(g) to determine "whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community":

(1) The nature and circumstances of the offense charged, including whether the offense involves a controlled substance or firearm;

(2) The weight of the evidence against the person;

(3) The history and characteristics of the person, including-

    (A) The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, and record concerning appearance at court proceeding; and

    (B) Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release;

(4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*Id*. "A finding that there are no conditions to reasonably assure the safety of the community must be supported by 'clear and convincing evidence.'" *Id*., citing 18 U.S.C. § 3142(f)(2)(B).

Page 4    RESPONSE TO GOVERNMENT'S MOTION TO REVOKE RELEASE ORDER

Finally, as noted by the Court in the short phone conference with the parties, the existence of an ICE detainer and the probability of a defendant's immigration detention and removal play no part in the analysis. *See United States v. Sanots-Flores*, 794 F.3d 1088, 1091-92 (9th Cir. 2015); *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1176-78 (D. Or. 2012).

## IV.    ARGUMENT

In this case, the Magistrate Judge correctly found, after consideration of the 3142(g) factors, that there were conditions of release that would reasonably assure the appearance of Mr. Villasenor-Ochoa and the safety of the community. The government concedes that there are conditions which reasonably assure appearance. Therefore, the only issue is whether there are conditions which can reasonably assure the safety of the community, something the government has the burden to prove by clear and convincing evidence there are not.

Mr. Villasenor-Ochoa and his wife have been together for 16 years and they have three kids together. Mr. Villasenor-Ochoa is 38 years old and has no criminal convictions whatsoever, much less violent or domestic violence related priors. The family has been in the Tillamook area for approximately 13 years, and Mr. Villasenor-Ochoa has a long history of working at dairy farms in the area. Mr. Villasenor-Ochoa disclosed to Pretrial his use of methamphetamine in the 8 months leading up to the incident and expressed genuine interest in any recommended drug treatment even though he has not used since December 21, 2025. A condition requiring a defendant to undergo a drug assessment upon release and to engage in recommended treatment is possibly the signal most imposed special condition to assure appearance and safety of the community.

The government tries to establish there are no conditions to reasonably assure the safety of the community by focusing on the nature of the incident preceding the discovery of the firearm on December 23, 2025. Domestic violence is admittedly serious. However, the incident occurred on December 21, 2025, and concluded with an alleged threat but no physical violence. It also

concluded on its own without any police intervention. The police learned of the incident afterward and contacted Mr. Villasenor-Ochoa two days later. Rather than being belligerent or defensive, he was apologetic and said he had made an "error." He was arrested later that day without incident. There is no indication that anything further occurred either between December 21 and 23, after his release on December 24, or in the 16 years of their relationship before December 21, 2025.

Most importantly, Mr. Villasenor-Ochoa has demonstrated by his actions that there are conditions which can reasonably assure the safety of the community. The government did not issue the complaint in this case until April 20, 2026. By that time, Mr. Villasenor-Ochoa had been on release in the state case for 4 months without incident. His wife successfully petitioned the state court to lift the no contact order on January 26, 2026. Both have been undergoing marriage counseling and they have been working together to co-parent their children. As the government concedes, Mr. Villasenor-Ochoa's wife was at the release hearing and was interviewed by the pretrial officer. She reported Mr. Villasenor-Ochoa has been staying clean, attending counseling, and things have been better.

The government asserts her position should not be controlling and references the complexity of domestic violence. Neither defense counsel nor the magistrate judge took that position. Rather, the nature and circumstances of the case, defendant's personal history, and his wife's presentation, did not include indicators of historical or ongoing domestic violence, and at the very least the government failed to prove by clear and convincing evidence that conditions such as continued counseling, regular reporting, and drug assessment and treatment, could not reasonably assure the safety of the community.

For these reasons, Mr. Villasenor-Ochoa respectfully requests this Court to affirm the existing release order.

Dated: May 11, 2026.

/s/ Robert Hamilton
Robert Hamilton, OSB #012730